# EXHIBIT A

MAR

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

FILED IN OFFICE

AUG 2 8 2013

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

ESTATE OF MARTIN LUTHER KING,      )
JR., INC.,                         )
                                   )
          Plaintiff,               )
                                   )
v.                                 )    Civil Action File No.: 2013CV235791
                                   )
THE MARTIN LUTHER KING, JR.        )
CENTER FOR NONVIOLENT SOCIAL       )
CHANGE, INC.                       )
                                   )
          Defendant.               )

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the Estate of Martin Luther King, Jr., Inc. ("Plaintiff"), and brings this

action against The Martin Luther King, Jr. Center for Nonviolent Social Change, Inc.

("Defendant") seeking a declaratory judgment. As set forth more fully below, Plaintiff has given

Defendant notice of Plaintiff's intent to terminate, following expiration of the required notice

period, that license Plaintiff granted to Defendant for Defendant's use of Plaintiff's Intellectual

Property, and Defendant has stated its intent to nonetheless breach its contractual obligations and

make illegal use of Plaintiff's Intellectual Property.

Plaintiff respectfully requests that this Court grant Plaintiff declaratory relief and end the

dispute between the parties regarding Defendant's compliance obligations under the license.

## PARTIES

1.

Plaintiff is a domestic for-profit corporation, with its registered, principal office and place

of business resides at IPM, manager of the King Estate, located at 449 Auburn Avenue, Atlanta,

Georgia 30312 in Fulton County, Georgia.

Plaintiff's Chairman is Martin Luther King, III.

Plaintiff's President and CEO is Dexter S. King.

2.

Defendant is a foreign, non-profit corporation with its registered, principal office and place of doing business at 449 Auburn Avenue, Atlanta, Georgia 30312 in Fulton County, Georgia.

Defendant's CEO is Bernice A. King.

## JURISDICTION AND VENUE

3.

This Court has jurisdiction over this action pursuant to Ga. Const. Art. VI, § IV, Para. I and O.C.G.A. §§ 9-4-2, 9-4-3, and 15-6-8.

4.

Venue is proper in this Court pursuant to O.C.G.A. § 14-2-510(b)(1).

## FACTS

5.

Plaintiff is the owner of all legally-protected rights and property interests throughout the world in (1) the name, image, likeness, recorded voice, and memorabilia of Dr. Martin Luther King, Jr., including the rights of publicity thereof; (2) all works of authorship of Dr. Martin Luther King, Jr., including writings, speeches, sermons, letters, and copyrights to the same; (3) the remains and coffin contained within the crypt of Dr. Martin Luther King, Jr.; and (4) the trademark interests described above, including without limitation interest in the name "Martin

2

Luther King, Jr." as an identifying element in Defendant's moniker "The Martin Luther King, Jr. Center for Nonviolent Social Change, Inc.", as well as Defendant's shortened moniker, "The King Center," (collectively, the "Intellectual Property").

6.

On March 9, 2007, Plaintiff granted Defendant a nonexclusive, worldwide, royalty-free license ("License") to make use of the Intellectual Property for the purpose, in the manner, and under the conditions described in the License. A true and correct copy of the License is attached and incorporated herein as Exhibit "A."

7.

The mission of Defendant, as represented to Plaintiff, is stated in the second "Whereas" paragraph of the License: "Licensee wishes to exercise rights in the Intellectual Property to further its mission of maintaining the legacy of the Rev. Dr. Martin Luther King, Jr. and educating the public on the history of civil rights in the United States, the principles of nonviolent social change, and other teachings of the Rev. Dr. Martin Luther King, Jr." *See* Ex. A.

8.

The history of Dr. Martin Luther King, Jr. and of the Civil Rights Movement in the United States is captured in Plaintiff's Intellectual Property, including its memorabilia currently in the custody of Defendant. Plaintiff's Intellectual Property is extensive and is an irreplaceable national treasure.

9.

Plaintiff supports the work and management of Defendant, and for the past decade has

3

been its single largest individual financial contributor; however, the cooperative relationship Plaintiff has had with Defendant has recently become strained, resulting in a total breakdown in communication and transparency between Plaintiff and Defendant.

10.

In order to ensure that Plaintiff's Intellectual Property and Physical Property is properly used and cared for by Defendant in furtherance of Defendant's mission, Plaintiff conducted an audit and review of Defendant's practices and procedures in April 2013.

11.

The audit revealed that the current manner of care and storage of the Physical Property by Defendant is unacceptable, i.e., the Physical Property is susceptible to damage by fire, water, mold, and mildew, as well as to theft.

12.

After the failure of several attempts by Plaintiff to address and remedy its concerns regarding Defendant's use of and care for Plaintiff's Physical Property, and other threshold issues outlined in various documents from Plaintiff to Defendant, as well as failed meetings and communications between Plaintiff and Defendant to bring about the same, Plaintiff was forced to take action and give the required License termination notice to Defendant.

13.

Notice was given to Defendant by Plaintiff on August 10, 2013 pursuant to Paragraph 5 of the License (*see* Ex. A at p. 3) that Plaintiff will terminate the License following expiration of the thirty (30) day notice period ("Notice"). *See* August 10, 2013 Notice, attached as Exhibit

4

"B," at 2.

14.

Plaintiff's Notice further directs Defendant to Paragraph 6 of the License and Defendant's

obligations thereunder, including Defendant's timely, full compliance with its agreed-upon

obligations upon the termination of the License. *See* Ex. A at p. 3; Ex. B. at 2.

15.

Plaintiff's Notice further states that Defendant may prevent the termination of the License;

however, such prevention requires the following actions to be taken by Defendant: (1) place

CEO Bernice King on administrative leave pending the final outcome and findings of Plaintiff's

audit investigation of Defendant, per Defendant's policies and past practices; (2) place all

approval responsibilities of Defendant in Plaintiff with respect to the use, care and treatment of

Plaintiff's Physical Property until a solution to Plaintiff's concerns regarding the use, care and

treatment of Plaintiff's Physical Property can be instituted; (3) immediately remove Alveda King

from Defendant's Board of Directors because of her consistent violations of Defendant's policies

and procedures in an effort to impede Plaintiff's audit investigation; and (4) immediately remove

Andrew Young from Defendant's Board of Directors for breaching his fiduciary duty by

willfully infringing upon Plaintiff's intellectual property in commercial ventures and

disregarding Defendant's policies. *See* Ex. C.

16.

In response, Defendant's Chief Executive Officer, Bernice King, through her personal

attorney, gave notice in a August 14, 2013 letter that the Defendant, in violation of the entirety of

Defendant's acknowledgements and obligations in and under the license, is taking action to work

5

a violation of Plaintiff's Intellectual Property rights. *See* Ex. D.

17.

As a result, there is a dispute between the parties, who take adverse positions regarding the lack of any right of Defendant to continued use of Plaintiff's Intellectual Property after termination of the underlying license, and the right of Plaintiff to insist on Defendant's timely compliance with its acknowledgements and obligations under the subject License.

## COUNT I
## (DECLARATORY JUDGMENT)

18.

Plaintiff specifically realleges and incorporates herein by reference the allegations of paragraphs 1 through 17 above.

19.

Plaintiff states that it properly provided, pursuant to the terms of the License, thirty (30) days' written notice to Defendant of the termination by Plaintiff of the License.

20.

Defendant is taking action, in violation of the entirety of Defendant's acknowledgements and obligations in and under the License, to work a violation of Plaintiff's Intellectual Property rights.

21.

As a result of the foregoing facts, an actual, justiciable dispute exists between the parties with respect to future intended acts by Defendant to unlawfully continue using Plaintiff's Intellectual Property without permission, despite the fact that Plaintiff has provided the requisite Notice of the termination of Defendant's right to continue using the Intellectual Property. This

actual, justiciable dispute can only be resolved by a decree of this Court.

22.

The ends of justice require and compel Plaintiff to request from this Court a declaration 1) that Defendant's right to any use or continued possession of Plaintiff's Intellectual and Physical Property, following expiration of the requisite thirty (30) day notice period, is subject to immediate termination, and 2) that Defendant shall comply with the entirety of its acknowledgements and obligations contained in the underlying License.

23.

In light of Defendant's actions, Plaintiff is uncertain as to its and Defendant's rights and status regarding the Defendant's use of Plaintiff's Intellectual and Physical Property, which uncertainty can be resolved only by a decree of this Court.

24.

Therefore, pursuant to O.C.G.A. §§ 9-4-1 *et seq.*, Plaintiff is entitled to a judgment declaring that pursuant to Georgia law and the License, 1) that Defendant's right to use or continued possession of Plaintiff's Intellectual and Physical Property, following expiration of the requisite thirty (30) day notice period, is subject to immediate termination, and 2) that Defendant shall comply with the entirety of its acknowledgments and obligations contained in the underlying License.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

1.    Issue and enter judgment in favor of Plaintiff for all relief requested;

2.    Issue a Declaratory Judgment declaring that pursuant to Georgia law and the

7

License, 1) that Defendant's right to use or continued possession of Plaintiff's Intellectual and Physical Property, following expiration of the requisite thirty (30) day notice period, is subject to immediate termination, and 2) that Defendant shall comply with the entirety of its acknowledgments and obligations contained in the underlying License;

3.     Order Defendant to pay Plaintiff's attorney's fees and other reasonable litigation costs for being forced to bring this action to enforce its License and Georgia law; and

4.     Provide such other and further relief as this Court may deem just and proper.

Respectfully submitted, this **28th** day of August, 2013.

RAFUSE HILL & HODGES LLP
1355 Peachtree Street, N.E.
Suite 500
Atlanta, Georgia 30309-3232
Telephone: (404) 253-6000
Facsimile: (404) 253-6060

William B. Hill, Jr.
Georgia Bar No. 354725
*williamhill@RafuseHill.com*
Amy M. Palesch
Georgia Bar No. 866827
*amypalesch@RafuseHill.com*

Counsel for Plaintiff Estate of Martin Luther King, Jr., Inc.

8

# EXHIBIT "A"



## INTELLECTUAL PROPERTY LICENSE

This **INTELLECTUAL PROPERTY LICENSE** (the "**License**"), is entered into and effective as of this 9th day of March 2007 by and between The Estate of Martin Luther King, Jr. Inc. a corporation organized and existing under the laws of the State of Georgia, with its principal place of business located at 342 McGill Place, Atlanta, GA 30312, (hereinafter "**Licensor**") and The Martin Luther King, Jr. Center For Nonviolent Social Change, Inc , a not for profit corporation, organized and existing under the laws of the District of Columbia, with its principal place of business located at 449 Auburn Avenue, NE, Atlanta, GA 30312 (hereinafter "**Licensee**")

**WHEREAS,** the Licensor is the owner of all legally-protected rights and property interests throughout the world in (1) the name, likeness, and image of the Rev Dr. Martin Luther King, Jr., including rights of publicity; (2) all works of authorship of the Rev. Dr. Martin Luther King, Jr (including writings, letters, and public addresses), including copyright; and (3) the trademark interests described above, including without limitation trademark interest in the name The Martin Luther King, Jr. Center for Nonviolent Social Change, Inc, The King Center, The MLK Center (collectively, the "**Intellectual Property**");

**WHEREAS,** Licensee wishes to exercise rights in the Intellectual Property to further its mission of maintaining the legacy of the Rev. Dr. Martin Luther King, Jr. and educating the public on the history of civil rights in the United States, the principles of nonviolent social change, and other teachings of the Rev. Dr Martin Luther King, Jr.;

**WHEREAS,** since its founding in 1968, Licensee has used the Intellectual Property by permission of the Licensor;

**WHEREAS,** Licensor and Licensee now wish to memorialize, extend, and restate in this License their agreement with respect to the Intellectual Property.

**NOW, THEREFORE,** in consideration of the foregoing and of the mutual promises hereinafter set forth, the parties agree as follows:

**1. GRANT OF LICENSE.** In accordance with the terms of this License, Licensor hereby grants to Licensee a nonexclusive, worldwide, royalty-free license

> a to employ the name, "The Martin Luther King, Jr. Center for Nonviolent Social Change, Inc" , "The King Center" and the name, likeness, and image of the Rev. Dr. Martin Luther King, Jr. for purposes of performing the mission of Licensee as stated in its By-laws; and
>
> b to publicly display and exhibit the writings and spoken words (as they are currently being used on the premises and the website) of the Rev. Dr. Martin Luther King, Jr. at Licensee's facility in Atlanta, Georgia. Any additional uses after the effective date of this license agreement, must be approved by the Licensor in writing. The IP of Dr. King on the website must be in a non-downloadable format.

Intellectual Property License

\\\:DC - 025120/000001 - 2373119 v1



c.  In consideration of the rights granted herein to the Licensee to use the name and intellectual property of Dr. King to perpetuate it's mission and purpose, Licensor shall have approval over the employee primarily responsible for managing the staff and day-to-day operations of the Licensee; Executive Director, Managing Director, COO or whatever the title may be designated to the top (non-board elected) executive of the Licensee (ie.. The King Center). This day-to-day manager may not be a corporate officer or board elected position. Licensor shall have the right to evaluate this individual for job performance twice yearly. Licensor shall have the right to terminate this individual if necessary.

d.  Licensor will be assigned a permanent seat on the board of directors of Licensee as long as Licensee is licensed to utilize and benefit from the Intellectual Property Rights and Rights of Publicity of Martin Luther King, Jr. Licensor's board representative will also be an ex-officio member of the executive committee and all standing committees, and have access to administrative and financial records at will.

The foregoing license does not include the right to publish any part of the Intellectual Property [for sale or not for sale] in any printed form including, but not limited, to books, sound or visual recordings, or otherwise or create merchandise.

**2. OWNERSHIP OF INTELLECTUAL PROPERTY.** Licensee acknowledges the King Estate's exclusive ownership of the Intellectual Property, and agrees that it will do nothing inconsistent with such ownership. Licensee agrees to assist Licensor upon request in recording this License with appropriate government authorities. Licensee agrees that nothing in this License shall give Licensee any right, title or interest in the Intellectual Property other than the right to use the Intellectual Property in accordance with this License, and Licensee agrees that it will not challenge the Licensor's title to the Intellectual Property, Licensor's license rights in respect of the Intellectual Property, or the validity of the Intellectual Property during the term of this License and thereafter.

**2.a. THE BIRTH HOME OF MARTIN LUTHER KING, JR.**- The "Birth Home" rights of publicity and marketing rights shall be governed by the intellectual property guidelines set forth in this license agreement. Licensor shall own and control these rights and administrate them in the same manner as the intellectual property of Dr. King

**2.b. SPONSORSHIPS AND CAUSE MARKETING**-Licensee shall not have the right to grant or sublicense (royalty or royalty free) the use of Dr. King's intellectual property or rights of publicity to funding sources such as corporations, grant organizations, government agencies donors or any other third party. Licensor shall retain all such rights and administrate them solely within its discretion. This language shall apply to the crypt and Birth Home as well.

**3. INFRINGEMENT PROCEEDINGS.** Licensee agrees to notify Licensor of any unauthorized use of the Intellectual Property by others promptly as it comes to Licensee's attention. Licensor shall have the sole right and discretion to take any action concerning any unauthorized use of the Intellectual Property; provided, however, Licensee agrees to provide

WMBC-025120/000001-2373115 v1

12



assistance to Licensor, as reasonably requested by Licensor in connection with any proceeding initiated by Licensor concerning any unauthorized use of the Intellectual Property. Licensee may not hire or contract with a person, corporation, organization, or entity, etc. to perform work for, provide services to, or serve on the board of Licensee if that entity or person is infringing upon the rights of Licensor

**4. KING BOOK AND RESOURCE CENTER.** In consideration for the use of the intellectual property of Dr. King and as sole and entire compensation for the rights granted to Licensee hereunder, Licensee shall pay to Licensor a fee equal to fifty percent of the Net Revenue of sales (ecommerce, point of purchase, remote kiosk or store, mail order, purchase order) made during the term of this License in any bookstore or shop operated by Licensee in its facility in Atlanta. Net Revenue means all proceeds of such sales, minus (i) sales taxes collected and paid by Licensee. The Fee shall be payable quarterly, within fifteen days after the end of each calendar quarter. Licensee shall provide a summary of revenue and costs with each payment. Upon request, Licensee shall afford Licensor and its auditor's reasonable access during business hours to the books and records of Licensee for the sole purpose of verifying the accuracy of fee calculations and payments.

**ACKNOWLEDGEMENTS:** It is acknowledged that since its inception Licensee has not made regular payments to Licensor. In some instances Licensor has received benefit in the form of pro rata share of staff compensation through Licensor's wholly owned subsidiary IPM for services that inure to the benefit of Licensor. This fact notwithstanding, there is still an outstanding balance owed to Licensor. It is further acknowledged that Licensee is in possession of videotape, audio tape, merchandise, memorabilia, exhibits, books, documents, photographs and other items that belong to Licensor. All such items will be returned to Licensor upon written request within 30 days of such request.

**THE REMAINS OF MARTIN LUTHER KING, Jr.** It is acknowledged that Licensor is the owner of the remains and coffin contained within the crypt of Martin Luther King, Jr. and may upon demand be removed by licensor at any time. If such removal of remains occurs, the words inscribed on the face of the crypt must also be removed within a time framed determined by Licensor

**5. TERMINATION.** Licensor may terminate this License upon thirty (30) days' written notice

**6. EFFECT OF TERMINATION.** Upon termination of this License, Licensee shall: (i) immediately discontinue all uses of the Intellectual Property; (ii) cooperate with Licensor or its appointed agent to apply to the appropriate authorities to cancel recording of this License from all government records; and (iii) to destroy all printed materials bearing the Intellectual Property. All rights in the Intellectual Property and the goodwill associated therewith shall remain the property of the Licensor. Notwithstanding the foregoing, Paragraphs 7, 8, and 9 shall survive any termination of this License. Since a termination is in effect designed to discontinue the relationship between Licensor and Licensee, Licensee agrees that there will be no further sale of King merchandise through Licensee's store or channels, as defined above

Intellectual Property License

\\\DC - 025420/000001 - 2373119 v1



## 7. WARRANTIES.

a.   Licensor represents and warrants that it possesses sufficient rights in the Intellectual Property lawfully to effect the license granted herein.

b.   Licensor represents and warrants that the use of the Intellectual Property as provided herein does not infringe upon the trademark, copyright, or other proprietary rights of any third party and that the grant of the license to Licensee hereunder does not violate law or constitute a default or breach under any contract or agreement to which Licensor is subject.

c.   Licensor hereby agrees to indemnify and hold Licensee harmless from damages that such Licensee may incur, to the extent they do not arise from any act or omission of such Licensee (other than reliance upon the Licensor's representation in the immediately preceding paragraph) and do arise from Licensor's breach of its representations, warranties or obligations in this Agreement. Licensee shall (i) promptly notify Licensor of any such claim or suit in writing and give Licensor the opportunity to control the defense or settlement of any such claim or suit, at Licensor's own expense; and (ii) cooperate fully with Licensor in defending or settling any such claim or suit. Licensee shall have the right to be represented in any such claim or suit by counsel of its own selection and at its own expense, and no settlement of such claim or suit shall be made without such Licensee's consent, which consent shall not be unreasonably withheld.

d.   THE WARRANTIES PROVIDED BY LICENSOR IN THIS SECTION 7 ARE THE ONLY WARRANTIES MADE BY LICENSOR WITH RESPECT TO THIS LICENSE AND THE INTELLECTUAL PROPERTY. SUCH WARRANTIES ARE IN LIEU OF, AND LICENSEE HEREBY WAIVES, ALL OTHER WARRANTIES BY LICENSOR, EXPRESS OR IMPLIED.

**8. LIMITATION OF LIABILITY.** IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES OF ANY TYPE ARISING OUT OF OR IN CONNECTION WITH THIS LICENSE, EVEN IF THE PARTY CHARGED MAY HAVE BEEN INFORMED IN ADVANCE OF THE POSSIBILITY OF SUCH DAMAGES.

## 9. MISCELLANEOUS

a.   *Controlling Law*  This License shall be interpreted and construed under the laws of the State of Georgia (excluding the choice of law rules thereof).

b.   *Assignment/Successors and Assigns.*  Licensee may not sublicense, assign, encumber, or otherwise transfer its rights and obligations under this License without the prior written consent of Licensor. This License shall be binding on and shall inure to the benefit of the parties to this License and their successors and permitted assigns.

c.   *Entire License.*  This instrument contains the entire agreement between the parties with respect to its subject matter. It supersedes and cancels any prior oral or written indications, undertakings, understandings, agreements, or negotiations concerning the subject

\\\DC - 025420/000001  2373119 v1

14



matter of this License. This License may not be altered in any respect except in writing signed by both parties.

d. *Severability.* The terms of this License shall be severable such that, if any term hereof is held to be illegal, invalid, or unenforceable, such holding shall not affect the viability of any of the other provisions of the License, unless the severing of such term would defeat the purpose of this License.

e. *Non-Waiver.* No delay or failure on the part of either Party hereto in exercising any right, power or privilege under this License shall impair any such right, power or privilege or be construed as a waiver or any acquiescence thereto. No waiver shall be valid against either Party, unless made in writing and signed by the Party against whom enforcement of such waiver is sought, and then only to the extent expressly specified therein.

f. *Notice* Any notice or communication required by this License shall be either registered or certified mail, postage prepaid, to the addresses indicated above. Each notice or communication hand-delivered, sent, or mailed in the manner described above shall be deemed provided for all purposes at such time as it is delivered to the addressee (with the return receipt or the delivery receipt being deemed conclusive, but not exclusive, evidence of such delivery) or at such time as delivery is refused by the addressee upon presentation. Either party may designate a different address by written notice to the other party.

g. *Independent Contractor.* Each party is an independent contractor and is not an agent, partner, joint venturer, or employee of the other by virtue of this License.

**IN WITNESS WHEREOF,** the parties hereto have caused this License to be executed written and delivered in their name and on their behalf as of the day and year first written above.

Licensee:
The Martin Luther King, Jr. Center for
Nonviolent Social Change, Inc.

By:

Name: Dexter S. King
Title: Chairman, COO

Licensor:
The Estate of Martin Luther King, Jr. Inc.

By:

Name: Yolanda D King
Title: Secretary

15

# EXHIBIT "B"



Rafuse Hill & Hodges L.L.P

August 10, 2013

## VIA CERTIFIED MAIL AND EMAIL

The Martin Luther King, Jr
Center for Nonviolent Social
Change, Inc
C/O Bernice King, CEO
449 Auburn Avenue, NE
Atlanta, Georgia 30312

Re:    **March 9, 2007 Intellectual Property License between The Estate of Martin Luther King, Jr., Inc. ("Licensor") and The Martin Luther King, Jr. Center for Nonviolent Social Change, Inc . ("Licensee").**

To:  The Martin Luther King, Jr Center for Nonviolent Social Change, Inc

The Estate of Dr Martin Luther King, Jr , Inc ("Licensor") is the owner of all legally protected rights and property interests throughout the world in (1) the name. image, likeness, and memorabilia of the Rev Dr Martin Luther King, Jr , including the Rights of Publicity; (2) all works of authorship of the Rev Dr Martin Luther King. Jr , including writings, speeches, sermons, letters. and copyright to same; and (3) the trademark interests described above, including without limitation interest in the name "Martin Luther King, Jr" as an identifying element in Licensee's moniker "The Martin Luther King, Jr Center for Nonviolent Social Change. Inc ", as well as Licensee's shortened moniker, "The King Center", (collectively, the "Intellectual Property") In addition, Licensor is the owner of the remains within the crypt of the Rev Dr Martin Luther King, Jr

On March 9, 2007 Licensor granted Licensee a nonexclusive, worldwide, royalty-free license ("The License") to make use of the Intellectual Property for the purpose. in the manner, and under the conditions described in said License

The original mission of The King Center. as represented to the Licensor. is stated in the second "Whereas" paragraph of The License:

> Licensee wishes to exercise rights in the Intellectual Property to further its mission of maintaining the legacy of the Rev Dr Martin Luther King, Jr and educating the public on the history of civil rights in the United States, the principles of nonviolent social change, and other teachings of the Rev Dr Martin Luther King, Jr

404.253.6000 | 1355 Peachtree Street NE Suite 500 Atlanta, GA 30309-3232 | www.RafuseHill.com



Rafuse Hill & Hodges ιιρ

The Martin Luther King, Jr
Center for Nonviolent Social Change, Inc
C/O Bernice King

August 10, 2013
Page 2

The history of the Civil Rights Movement in America is captured for all time in the Licensor's Intellectual Property, as well as its memorabilia currently in the custody of Licensee Like its Intellectual Property. Licensor's memorabilia is extensive and is nothing less than an irreplaceable national treasure; however, its manner of care and storage by Licensee, *i e*, its susceptibility to damage by fire, water, mold and mildew as well as theft, is unacceptable

The King Estate has gone above and beyond to support the work and management of its Licensee, The King Center, and for the past decade has been its single largest individual financial contributor However, in recent times this cooperative relationship has become problematic, causing a total breakdown in communication and transparency between The King Center and its Licensor

Licensor has determined through its recent audit investigation that King Center CEO, Bernice King's misconduct potentially jeopardizes the King Center's 501(c)3 tax-exempt status, and thus its ability to maintain the highest standard of compliance with its Licensee obligations

After countless attempts to remedy our concerns outlined in a memo sent to The King Center's Personnel Committee dated, July 11, 2013, as well as meetings and conversations between Licensor and Licensee to bring about same, Licensor has no choice but to take direct and immediate action

Notice is given pursuant to Paragraph 5 of The License that thirty days (30) from the date of this communication The License is terminated

Licensee is directed to Paragraph 6 and its obligations thereunder Licensee's timely and complete compliance with its agreed upon obligations is expected and required

Licensee can prevent termination of the License, however, such a cure shall include, but not be limited to the following:

- Placing Bernice King on administrative leave pending the final outcome and findings of Licensor's audit investigation, per King Center Board policy and past practice

18



Rafuse Hill & Hodges LLP

The Martin Luther King, Jr
Center for Nonviolent Social Change, Inc
C/O Bernice King

August 10, 2013
Page 3

- Licensor shall assume all approval responsibilities of Licensee in regards to the use of Licensor's intellectual property until a solution to Licensor's concerns can be instituted

- Immediately remove Alveda King from the King Center Board for consistently violating King Center Board policies and procedures in an effort to impede Licensor's audit investigation

- Immediately remove Andrew Young from the King Center Board for breaching his fiduciary duty by willfully infringing upon Licensor's intellectual property in commercial ventures and disregarding King Center Board policy

Sincerely,

William B. Hill, Jr.
*For Rafuse Hill & Hodges LLP*
Counsel for the Estate of Martin Luther King, Jr., Inc

WBH/amd

cc:  Christine King Farris (via email only)     REDACTED
     Alveda King (via email only)          REDACTED
     Martin Luther King, III (via email only)     REDACTED
     Dexter S King (via email only)   REDACTED
     Bernice King (via email only)           REDACTED
     Andrew Young (via email only)            REDACTED

19

# EXHIBIT "C"



INTELLECTUAL PROPERTIES MANAGEMENT, INC.

July 22, 2013

Ms. Andrea Young
Executive Director
Andrew Young Foundation
260 14th Street
Atlanta. GA 30308
VIA Electronic Mail (Andreayoung@andrewyoung.org) AND CERTIFIED MAIL.

Dear Ms. Young,

I am writing to you in my capacity as Managing Director of Intellectual Properties Management, Inc. (IPM), the manager of the Estate of Martin Luther King Jr. (King Estate) which owns, controls, and licenses Dr. King's intellectual property (IP) rights, including, but not limited to, name, image, likeness, words, rights of publicity, copyrighted works, recorded voice, and trade mark interests. This letter regards the extensive use of intellectual property that belongs to The Estate of Martin Luther King, Jr. Inc., in a series entitled "Andrew Young Presents – A History of the Civil Rights Movement for the Digital Age", that was produced by the Andrew Young Foundation, with Mr. Andrew Young serving as executive producer. Traditionally, those wishing to utilize Dr. King's intellectual property in entertainment or documentary productions will seek permission prior to the production of the project. To the best of our knowledge, you have not sought the proper licenses, which brings to light the concerns we have regarding the unauthorized use of Dr. King's intellectual property.

As is appropriate of any holder of intellectual property, the Estate polices the use of its intellectual property and ascertains whether use by others of the Estate's IP is potentially infringing. As of this juncture, we are unable to find any license agreements that were granted to the Andrew Young Foundation to use the rights of publicity, trademarks and /or copyrights of the Estate.

It was Dr. King who originally fought to legally protect his intellectual property following his recital of the "Dream" speech at the March On Washington in August of 1963. His estate has a legal mandate to continue to protect his intellectual property rights or lose them. The protection of these rights have been upheld in Federal court through the Estate's litigation against CBS for their use of the Estate's Intellectual Property in their documentary series. The Estate is particularly troubled when Dr. King's intellectual property is used in an unauthorized manner. This not only harms Dr. King's valuable legacy, but it also does a great disservice to the public by misleading consumers to believe that a production, service, or event is licensed by the Estate, when in fact it is not.

ONE FREEDOM PLAZA
449 AUBURN AVENUE, NE
ATLANTA GEORGIA 30312
(404) 526-8999     FAX (404) 526-8969

Please provide us with any and all license agreements that are in your possession and/or direct us to the party that will have these agreements within 7 days so that we can complete this inquiry. The license agreements sought cover both previous uses of the intellectual property of the Estate as well as projects under production. As you are very well aware, uses of Dr. King's name and image without permission constitute infringement and violate the valuable Right of Publicity and intellectual property that the Estate owns in Dr. King's name and image pursuant to Georgia state law and the federal Lanham Trademark Act, governing unfair competition, 15 U.S.C. § 1051 *et seq*.

Should the use of the Estate's intellectual property be found to be unauthorized and infringing without exceptions, the Copyright Act, codified under 17 U.S.C. §101 et seq., provides for remedies for copyright infringement include the plaintiff's actual damages and the infringer's profits attributable to the infringing acts; in the alternative, a plaintiff may opt to recover statutory damages, which can range as high as $150,000 per work infringed in instances where willfulness is shown. The Copyright Act also provides that prevailing plaintiffs can recover their reasonable attorneys' fees in pursuing a claim. Similarly, a prevailing plaintiff bringing an unfair competition claim under the Lanham Act can recover its actual damages and the infringer's profits (which may be trebled at the discretion of the court), as well as attorneys' fees. Both the Copyright Act and the Lanham Act provide for the imposition of injunctive relief. Violations of Georgia's right of publicity law (wherein Dr. King's Rights of Publicity have been upheld in the Georgia Supreme Court) and other Georgia state laws may provide additional remedies.

We look forward to a timely response.

Very Truly Yours,

Eric Tidwell
Managing Director

cc: Andrew Young, Chairman, Andrew Young Foundation
Martin Luther King, III. Chairman, The King Estate
Dexter Scott King, President & CEO, The King Estate

# EXHIBIT "D"

# McDermott
# Will & Emery

Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Silicon Valley  Washington, D C

Strategic alliance with MWE China Law Offices (Shanghai)

Stephen M. Ryan
Attorney at Law
sryan@mwe com
+1 202 756 8333

August 14, 2013

## VIA ELECTRONIC MAIL

Lovita T. Tandy, Esq.
King & Spalding
1180 Peachtree Street
Atlanta, GA 30309

Re:    The King Center

Dear Ms. Tandy:

On behalf of our client, Dr. Bernice A. King, we write to advise you of two issues presently confronting the King Center, each of which demands the immediate attention of the Board members who are not conflicted by the actions described herein. First, The Estate of Martin Luther King, Jr, Inc. (the "King Estate, Inc.") filed an improper trademark registration, published on July 30, 2013, for the name, "Martin Luther King Jr Center for Nonviolent Social Change." We believe the King Center Board members who are not shareholders in the King Estate, Inc. have a serious and important duty to perform in preventing Dexter King ("Mr. D. King") and Martin Luther King, III ("Mr. M. King") from taking any further actions as Board members of the King Center regarding this matter. We call upon the non-conflicted Board members to authorize your firm to oppose the trademark application. Second, and closely related, on August 10, 2013, William B. Hill, Jr. of Rafuse Hill & Hodges LLP sent a letter to the King Center, care of my client, providing notice of the King Estate, Inc.'s decision to terminate the Center's purported license from the King Estate Inc., unless certain conditions are met. These actions pose a grave threat to the Center's continued operation and, therefore, necessitate an urgent response from the Center's non-conflicted Board members.

Based on our prior conversation, we understand that King & Spalding has served as general counsel to the King Center for more than a decade. As the Center's general counsel, King & Spalding itself has an increasingly difficult ethical and fiduciary obligation to provide the Center with competent legal judgment, free of compromising influences and loyalties. Under the present circumstances, we believe King & Spalding can no longer continue to take any direction from Mr. D. King or Mr. M. King in rendering legal advice to the King Center, given that they have deliberately and intentionally violated their fiduciary duties to the Center. Messrs. D. King and M. King are exercising their majority control over the King Estate, Inc. to cause the company—from which they benefit financially—to take actions that directly harm the King Center. The obvious purpose of these actions was to hinder, if not put an end to, the King Center's current name and operations. In this respect and others, Messrs. D. King and M. King have disregarded their fiduciary obligations to the King Center, a non-profit organization, in

U.S practice conducted through McDermott Will & Emery LLP

500 North Capitol Street N W  Washington D C  20001-1531  Telephone: +1 202 756 8000  Facsimile: +1 202 756 8087  www mwe com

24

August 14, 2013
Page 2

pursuit of their own personal financial interests, and the related interests of the King Estate, Inc., a for-profit entity they control.

Messrs. D. King and M. King's actions have created unmistakable conflicts of interest. Perhaps, the most glaring example of these conflicts is the license termination notice, which states that the King Center can prevent the license termination by removing two current Board members, Ms. Alveda King and Mr. Andrew Young, from its Board of Trustees, among other things. Although the termination notice refers to removal of Ms. King and Mr. Young as a "cure," the reality is that the notice amounts to little more than extortion by the King Estate, Inc. As members of the King Center's Board, Messrs. D. King and M. King know, or should know, that terminating the King Center's license will severely damage the Center's public image, and impair the Center's ability to operate and obtain financial contributions. Accordingly, Messrs. D. King and M. King know that their termination letter is a blatant attempt to force the Center's Board to cede control to Messrs. D. King and M. King, or otherwise expose the Center to severe operational risk. Messrs. D. King and M. King's scheme is totally inconsistent with their duties to the King Center, and the spirit of their father and mother, the founder of the King Center.

The actions described here by the King Estate, Inc. have introduced the strong possibility that, at the very time the King Center should be focused on celebrating the 50th anniversary of Dr. King's "I Have A Dream" speech and the March on Washington, we run the serious risk that the deadlines created by the King Estate, Inc. will require the filing of litigation that will tarnish and reduce the impact of the King legacy. The Board will need to carefully consider allowing events to be dictated by personal and financial agendas or by the spirit of Dr. King and Coretta King.

As the Center's general counsel, we believe you have an ethical obligation to: (1) refrain from participating in Messrs. D. King and M. King's improper activities directed against the King Center and (2) advise the Center's non-conflicted Board members that they must ensure that Messrs. D. King and M. King are recused from any and all Board deliberation and decision-making relating to the trademark registration and license revocation.

As Dr. King's lawyer, we ask that the Board and you craft a strategy for preserving the King Center's rightful use of its name, provided decades ago by Mrs. Coretta King.

Please contact me as soon as possible to discuss these matters.

Sincerely,

Stephen M. Ryan

Enclosure



# Rafuse Hill & Hodges L.L.P

August 10, 2013

## VIA CERTIFIED MAIL AND EMAIL

The Martin Luther King, Jr
Center for Nonviolent Social
Change, Inc
C/O Bernice King, CEO
449 Auburn Avenue, NE
Atlanta, Georgia 30312

Re: **March 9, 2007 Intellectual Property License between The Estate of Martin Luther King, Jr., Inc. ("Licensor") and The Martin Luther King, Jr. Center for Nonviolent Social Change, Inc . ("Licensee").**

To: The Martin Luther King, Jr Center for Nonviolent Social Change, Inc

The Estate of Dr Martin Luther King, Jr, Inc ("Licensor") is the owner of all legally protected rights and property interests throughout the world in (1) the name, image, likeness, and memorabilia of the Rev Dr Martin Luther King, Jr , including the Rights of Publicity; (2) all works of authorship of the Rev Dr Martin Luther King, Jr , including writings, speeches, sermons, letters, and copyright to same; and (3) the trademark interests described above, including without limitation interest in the name "Martin Luther King, Jr." as an identifying element in Licensee's moniker "The Martin Luther King, Jr Center for Nonviolent Social Change, Inc ", as well as Licensee's shortened moniker, "The King Center", (collectively, the "Intellectual Property") In addition, Licensor is the owner of the remains within the crypt of the Rev Dr Martin Luther King, Jr

On March 9, 2007 Licensor granted Licensee a nonexclusive, worldwide, royalty-free license ("The License") to make use of the Intellectual Property for the purpose, in the manner, and under the conditions described in said License

The original mission of The King Center, as represented to the Licensor, is stated in the second "Whereas" paragraph of The License:

> Licensee wishes to exercise rights in the Intellectual Property to further its mission of maintaining the legacy of the Rev Dr Martin Luther King, Jr and educating the public on the history of civil rights in the United States, the principles of nonviolent social change, and other teachings of the Rev Dr Martin Luther King, Jr

404 253 6000 | 1355 Peachtree Street NE Suite 500 Atlanta, GA 30309-3232 | www RafuseHill .com



Rafuse Hill & Hodges ᴛᴛᴘ

The Martin Luther King, Jr.
Center for Nonviolent Social Change, Inc.
C/O Bernice King

August 10, 2013
Page 2

The history of the Civil Rights Movement in America is captured for all time in the Licensor's Intellectual Property, as well as its memorabilia currently in the custody of Licensee. Like its Intellectual Property. Licensor's memorabilia is extensive and is nothing less than an irreplaceable national treasure; however, its manner of care and storage by Licensee. *i.e.*, its susceptibility to damage by fire, water, mold and mildew as well as theft, is unacceptable.

The King Estate has gone above and beyond to support the work and management of its Licensee. The King Center, and for the past decade has been its single largest individual financial contributor. However, in recent times this cooperative relationship has become problematic, causing a total breakdown in communication and transparency between The King Center and its Licensor.

Licensor has determined through its recent audit investigation that King Center CEO, Bernice King's misconduct potentially jeopardizes the King Center's 501(c)3 tax-exempt status, and thus its ability to maintain the highest standard of compliance with its Licensee obligations.

After countless attempts to remedy our concerns outlined in a memo sent to The King Center's Personnel Committee dated, July 11, 2013, as well as meetings and conversations between Licensor and Licensee to bring about same, Licensor has no choice but to take direct and immediate action.

Notice is given pursuant to Paragraph 5 of The License that thirty days (30) from the date of this communication The License is terminated.

Licensee is directed to Paragraph 6 and its obligations thereunder. Licensee's timely and complete compliance with its agreed upon obligations is expected and required.

Licensee can prevent termination of the License, however, such a cure shall include, but not be limited to the following:

• Placing Bernice King on administrative leave pending the final outcome and findings of Licensor's audit investigation, per King Center Board policy and past practice.



Rafuse Hill & Hodges LLP

The Martin Luther King, Jr
Center for Nonviolent Social Change, Inc
C/O Bernice King

August 10, 2013
Page 3

- Licensor shall assume all approval responsibilities of Licensee in regards to the use of Licensor's intellectual property until a solution to Licensor's concerns can be instituted

- Immediately remove Alveda King from the King Center Board for consistently violating King Center Board policies and procedures in an effort to impede Licensor's audit investigation

- Immediately remove Andrew Young from the King Center Board for breaching his fiduciary duty by willfully infringing upon Licensor's intellectual property in commercial ventures and disregarding King Center Board policy

Sincerely

*William B. Hill Jr.*

William B Hill. Jr
*For Rafuse Hill & Hodges LLP*
Counsel for the Estate of Martin Luther King. Jr, Inc

WBH/amd

cc:   Christine King Farris (via email only)      REDACTED
      Alveda King (via email only)        REDACTED
      Martin Luther King, III (via email only)      REDACTED
      Dexter S King (via email only)      REDACTED
      Bernice King (via email only)          REDACTED
      Andrew Young (via email only)          REDACTED

28



## IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
### SUMMONS

| | |
|---|---|
| ESTATE OF MARTIN LUTHER KING, JR., | ) Case 2013CV235791 <br> ) No.: |
| | ) |
| INC. | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| THE MARTIN LUTHER KING, JR. CENTER FOR | ) |
| | ) |
| NONVIOLENT SOCIAL CHANGE, INC. | ) |
| **Defendant** | ) |
| | ) |
| | ) |
| | ) |
| | ) |

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file with the Clerk of said Court and serve upon plaintiff's attorney, whose name and address is:

William B. Hill, Jr., Esq.
Rafuse Hill & Hodges LLP
1355 Peachtree St., N.E., Ste. 500
Atlanta, Georgia 30309

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) days of such service. Then time to answer shall not commence until such proof of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This _____ 28 _____ day of _August_, 20 13

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By_____
Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20_____

_____
Deputy Sherriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

29